UNITED STATES, Appellee

v

HIRAM KING, Technical Sergeant,
U. S. Air Force, Appellant

14 USCMA 227, 34 CMR 7

No. 16,794

November 15, 1963

*Lieutenant Colonel Andrew Horton* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel E. Henderson, Jr.,* and *Major Charles K. Rush.*

*Captain Donald Brewer* argued the cause for Appellee, United States. With him on the brief was *Colonel Emanuel Lewis.*

## Opinion of the Court

FERGUSON, Judge:

Convicted by general court-martial of two specifications of carnal knowledge, in violation of Uniform Code of Military Justice, Article 120, 10 USC § 920, the accused was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction to the grade of Basic Airman. Intermediate appellate authorities affirmed, and we granted accused's petition for review upon the issue:

"Whether the instructions of the law officer as to compliance with Article 31 [10 USC § 831] were adequate and correct."

A brief summary of the factual background depicted in this record will serve to put the granted question in proper focus. Accused's fourteen-year-old niece testified Sergeant King had sexual connection with her on a number of occasions at divers places, including Big Springs, Texas. Eventually, the matter came to the attention of civilian authorities at Big Springs.

Sergeant Foster, an Air Policeman from accused's military station, served as liaison officer between Big Springs civil authorities and the Air Base. At the request of Mr. Darland, a local juvenile officer, he called Sergeant King and asked him "would he come down to the District Attorney's office so that he might talk to or question him regarding an accusation that his niece had made against him."

When King arrived, the following transpired, according to Sergeant Foster:

"Q. What did you say to him?

"A. Well, I went to the office where Sergeant King was sitting—his niece was also there, . . . —I introduced myself to Sergeant King, told him who I was, I asked him if he needed anything, told him he didn't have to say anything to anybody if he didn't want to, and if I could be of any service or help to him I would, and if he wanted to tell me something, well, fine, or words of this nature.

"Q. Did he say anything?

"A. Yes, Sir, he did.

"Q. Did you advise him that anything he said could be used against him?

"A. No, Sir, I didn't.

"Q. Are you positive you didn't?

"A. I don't recall if I did, Sir. I can't say if I did or didn't.

"Q. Did you sit in while the statement was being taken from him?

"A. Yes, Sir, I did.

"Q. Who took the statement?

"A. Mr. Fern Cox."

Further examination of Foster and Darland disclosed that, upon accused's arrival, he was taken into an annex to the grand jury room, where the foregoing "warning" was given him by Foster. The Air Policeman "more or less" found out "what the story was" when he asked King if there was "anything you want to tell me." On cross-examination, Foster again stated that he "did not advise Sergeant King that anything he said could be used against him in a trial by court-martial." He considered the investigation to be in the hands of the juvenile officer, Darland, although the latter was in an adjoining room during King's interrogation.

Following the session with Foster, during which accused orally confessed his guilt, the officer took him to an outer office where Deputy Milton Fern Cox reduced the statement to writing after advising King that he need make no statement at all and that any statement he made might be used as evidence against him at any trial for the offense concerning which the statement was made. The oral and written statements were taken for use of the civilian as opposed to the military authorities.

According to Darland and Foster's superior, the Assistant Provost Marshal, who declared they overheard King's interview through an intercom system, Foster fully advised the accused of his rights under Code, supra, Article 31, prior to questioning him.

Defense objection to receipt of accused's statement, premised on lack of proper warning under Code, supra, Article 31, was overruled by the law officer. He submitted the question of the sufficiency of Sergeant Foster's advice to the court-martial under instructions which included the following:

"In addition, before you may consider Prosecution Exhibit #2 you must determine that it was not obtained through coercion, unlawful influence or unlawful inducement. In this connection you are advised that the statements to Sergeant Foster by the accused must be considered. If you determine that he did not advise the accused of his rights under Article 31b before the statements were made, to wit: (1) The nature of the accusation; (2) That he did not have to make any statement; and (3) That any statement made by him might be used as evidence against him, *then you must determine whether or not he was required to advise the accused of his rights under Article 31b. If Sergeant Foster was not acting officially in furtherance of an official investigation into a suspected crime, or you determine that he was not investigating the crimes alleged but merely acting as an agent or instrument of the civilian authorities, he was not required to advise the accused of his rights under Article 31b. The burden on this question of fact is upon the Government.*" [Emphasis supplied.]

The law officer reiterated this advice at the close of the trial, once again declaring that Foster was not required to advise the accused of his rights under Code, supra, Article 31, if he obtained the oral statement while "acting as an agent or instrument of the civilian authorities."

We are met at the outset with the Government's contention that the evidence raises no issue concerning the sufficiency of Foster's warning to the accused. It argues that a witness testified unequivocally that he overheard Foster give a complete and proper warning to the accused. As opposed to this, the Government finds only testimony by Foster that he did not recall whether he had advised the accused that any statement he made might be used against him. Thus, urges the Government, there is no testimony in the record that accused was not properly warned, and no issue was presented for the fact finders. Our scrutiny of the transcript leads us to a different conclusion.

Foster initially testified on direct examination that he did not advise King "anything he said could be used against him." Pressed by the trial counsel as to whether he was "positive," Foster then declared, "I can't say if I did or didn't." On cross-examination, after

being presented with his testimony at the pretrial investigation, he testified that he "did not advise Sergeant King that anything he said could be used against him in a trial by court-martial," further stating that "the only recourse is that it can go against him."

When it attempts to introduce in evidence an accused's pretrial statement, the burden is upon the ▪ United States to establish ▪ that a proper warning was given under Code, supra, Article 31. United States v Wilson, 2 USCMA 248, 8 CMR 48; United States v Doyle, 9 USCMA 302, 26 CMR 82; United States v Gorko, 12 USCMA 624, 31 CMR 210; United States v Odenweller, 13 USCMA 71, 32 CMR 71. That burden is not carried by testimony that an investigator is unable to recall whether he gave the necessary warning. Nor is it satisfied by evidence of an incomplete warning. United States v Doyle, supra; United States v Wilson, supra. But that is precisely what this record demonstrates, for Foster's testimony progresses from a flat denial that he had correctly advised the accused, through an inability to recall whether he had done so, to a return to his original position. True it is that other evidence appears which tends to establish a proper warning was given, but it is a distortion to say that such was, in light of Foster's equivocations, uncontradicted. The burden, as we have noted, is upon the Government to establish the existence of a proper warning and, upon this record, we believe it to have been open to the court members to find, on the basis of Foster's testimony, that he delivered no such advise to King.

The Government next contends that we are here concerned with the admissibility of the written statement made to Cox rather than the oral confession to Foster. Again, therefore, it urges no real issue is presented, for, admittedly, Cox did not act as an agent or instrument of the armed services in obtaining the statement, and, indeed, he gave the accused a proper warning before having him execute it. Cf. United States v Dial, 9 USCMA 700, 26 CMR 480. The short answer to this argument is that Cox acted as little more than an amanuensis in re- ▪ ducing accused's previous oral confession to writing. As his testimony indicates, he had nothing to do with Sergeant King until the latter had been interrogated by Foster. After such was completed, Cox was asked to assist accused in placing it in written form. In short, as Cox testified, "Mr. Darland . . . said that he would try to get someone that he could dictate the statement to—then he turned around and said, 'Well, you can take the statement, can't you?' I said, 'Yes,' and then I took it." The written statement stands on precisely the same footing as the oral, and we conclude an issue of fact was clearly raised with respect to its admissibility. We turn, therefore, to the law officer's instructions regarding this question.

In United States v Grisham, 4 USCMA 694, 16 CMR 268, we pointed out that Code, supra, Article 31, lays no requirement to warn an accused of his rights upon the shoulders of a civilian officer, unless his interrogation is in furtherance of a military investigation or he is acting in any sense as the instrument of the military. See also United States v Dial, supra; United States v Young, 10 USCMA 249, 27 CMR 323; United States v Holder, 10 USCMA 448, 28 CMR 14; United States v Smith, 10 USCMA 619, 28 CMR 185; and United States v Aau, 12 USCMA 332, 30 CMR 332. The rationale which led us to this conclusion is embedded within the Article itself, for that statute, by its own terms, applies the need to advise an accused of his rights only to those interrogators who are "subject to this chapter." United States v Grisham, supra, at page 696. And by necessary implication, the same is binding upon those acting as instruments of persons subject to the Code. United States v Grisham, supra.

Similar reasoning leads us to conclude that the law officer's instructions here were erroneous, for he ▪ briefly advised the court-martial there is no duty on the part of Foster to warn the accused of his rights if he was not acting on behalf of the armed forces but "as an

agent or instrument of the civilian authorities." Yet, Foster, an enlisted member of the Air Force, was clearly "subject to this chapter," and, suspecting accused of the very offenses with which he was ultimately charged, interrogated him concerning these crimes. As such, it was his duty under Code, supra, Article 31, to advise accused of his rights regardless of whether he was taking a statement on behalf of the Air Force or the Texas authorities. The very words of the enactment command it, and the reasoning which led us to exempt civilians from its requirements unless they were acting on behalf of the military cannot be perverted into an exemption for him simply because he may have been acting on behalf of local authorities. Indeed, the record demonstrates this was a joint military-civilian investigation in which Foster questioned the accused while the Assistant Provost Marshal and Darland listened to the interview from an adjoining room. We hold, therefore, that it was erroneous to advise the court-martial there was no duty on Sergeant Foster to inform the accused of his rights if he was interrogating King on behalf of the civil authorities. As the sufficiency of his advice to King was placed in issue by the state of the proof, the error was prejudicial. United States v Odenweller, supra; United States v Gorko, supra.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Chief Judge QUINN and Judge KILDAY concur.