UNITED STATES, Appellant,

v

THOMAS P. MURPHY, Airman Second Class, U. S. Air Force, Appellee

14 USCMA 535, 34 CMR 315

No. 17,427

May 1, 1964

*Major James Taylor, Jr.,* argued the cause for Appellant, United States. With him on the brief was *Colonel Emanuel Lewis.*

*Major James E. Caulfield* argued the cause for Appellee, Accused. With him on the brief was *Colonel Daniel E. Henderson, Jr.*

## Opinion of the Court

FERGUSON, Judge:

A general court-martial, convened at Lockbourne Air Force Base, Ohio, on July 30, 1963, convicted the accused of three specifications of forgery, in violation of Uniform Code of Military Justice, Article 123, 10 USC § 923, and a single count of wrongful possession, with intent to deceive, of another's Armed Services Liberty Pass, in violation of Code, supra, Article 134, 10 USC § 934. He was sentenced to bad-conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for one year, and reduction to basic airman. The convening authority approved the sentence. The board of review reversed and ordered a rehearing, believing that the law officer's instructions were not properly tailored

536

to an issue of voluntariness raised by the evidence concerning accused's confession. The Judge Advocate General, United States Air Force, has certified the board's decision to this Court upon the following questions:

"1. WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE LAW OFFICER ERRED BY NOT SUBMITTING TO THE COURT UNDER APPROPRIATELY TAILORED INSTRUCTIONS, THE QUESTION OF WHETHER ACCUSED'S CONFESSION TO AGENT BALGE WAS THE PRODUCT OF HIS EARLIER DISCLOSURE TO SERGEANT RIDER?

"2. IF THE FIRST QUESTION IS ANSWERED IN THE AFFIRMATIVE, WAS THE BOARD OF REVIEW CORRECT IN ITS DETERMINATION THAT THE LAW OFFICER ERRED IN NOT SUBMITTING TO THE COURT THE QUESTION OF WHETHER SERGEANT RIDER HAD A DUTY TO WARN THE ACCUSED PURSUANT TO ARTICLE 31 BEFORE ASKING HIM WHETHER HE HAD COMMITTED THE OFFENSE?"

According to the evidence, certain Federal income tax refund checks were issued by the United States to various parties assigned to the 801st Civil Engineering Squadron. They were not received by the addressees. Nevertheless, such checks, falsely endorsed, were negotiated and paid by the Treasury. Accused and an Airman Neal were observed cashing one of the checks at a Columbus, Ohio, bowling alley. Neal was the mail clerk of the 801st Squadron, and accused was also a member of that organization.

Kenneth E. Balge, an agent of the United States Secret Service, testified that, as a result of the negotiation of the checks upon allegedly false endorsements, he came to Lockbourne Air Base in order to conduct an investigation. On May 22, 1963, he interviewed the accused and obtained a statement from him as well as the liberty pass which is involved in the charges here, the pass having been used to facilitate negotiation of one of the checks. Prior to interrogating accused, Agent Balge "advised him of his rights under the Fifth Amendment in that he did not have to make any statements to me and that any statements that he did

make could be used against him." Balge also informed Murphy that "he had a right to be represented by counsel and further that any statement he did give me would have to be given freely and voluntarily and I was not making him any promises or giving him any threats in order to receive his statement." He told the accused he was investigating "reports of stolen checks, forged checks, from the 801st unit."

Accused's Noncommissioned Officer-In-Charge, Staff Sergeant Rider, was present during the entire period of questioning and when the pass was delivered into Balge's hands.

Sergeant Rider "was not working in conjunction with" Agent Balge, but did participate in the interrogation by asking "some questions." Rider did not at any time advise accused of his rights under Code, supra, Article 31, 10 USC § 831. According to Balge, accused's answers to Rider's questions seemed to be directed to the agent rather than to the actual interrogator.

At all times during the interview, accused "was subject to Air Force control." Balge was then aware that a local Federal judge had indicated he preferred the Air Force to try cases which could be tried either by it or by the District Court. This was not a "set ruling," however, and Balge informed the accused "it would be up to the Air Force and the United States Attorney's Office in Columbus, Ohio, to decide who would actually handle the prosecution."

Agent Balge further declared that he was conducting his investigation solely on behalf of the Treasury Department and not in anyway "as an agent in the military" nor "under their direction or control." He did not request Sergeant Rider's presence, but "was told that he was his work supervisor and that he came along with him when he was brought in."

Sergeant Rider appeared as a witness for the defense. He declared that he was present during Murphy's interview at his own request and not in any official capacity. He was accused's immediate superior and obtained permission from

the First Sergeant to accompany him to the interrogation by Balge. He asked accused "one particular question," *i. e.*, "whether or not he had committed the offenses." In response, accused admitted his guilt to Rider and subsequently executed a written statement to Agent Balge, which Rider witnessed.

Prior to interrogating accused, Rider did not advise him of his rights under Code, supra, Article 31. He was uncertain whether his "one particular question" came before or after Agent Balge's warning to accused of his rights under the Fifth Amendment. At first, he declared the advice came "after" the question was put. Later, he indicated the warning came before the agent interviewed Murphy. On still another occasion, he declared that his question followed Balge's warning.

In addition, Sergeant Rider informed the accused that it might "go easier with him if he cooperated with them and helped them the best he could." He could not recall whether he had mentioned a trial, and Agent Balge had informed Murphy "he couldn't make any statement like that about lettin' him off easier or anything like that."

Based upon the foregoing, defense counsel objected to receipt of accused's written statement to Agent Balge in evidence as the product of his unwarned admission of guilt to Sergeant Rider, who, it was contended, had acted officially in obtaining this oral declaration. The law officer overruled the objection and admitted the statement in evidence, subject to the following instructions:

"You are advised that my ruling receiving in evidence Prosecution Exhibit 6, the out-of-court statement of the accused with respect to the offenses charged, is final only on the question of admissibility. My ruling merely places the statement before the court, it does not establish the voluntary nature of the statement for each of you in your deliberations upon the findings of guilt or innocence, must come to your own conclusions as to the voluntary nature of the statement. You may accept the statement as evidence only if you determine beyond reasonable doubt that it was voluntary. Otherwise, you must reject the statement and disregard it as evidence in the case. You are instructed in this connection that this out-of-court statement of the accused is not voluntary if it was obtained from the accused through the use of coercion, unlawful influence or unlawful inducement. You are also advised that even if you determine beyond reasonable doubt that the statement was voluntary, you should consider the evidence which has been presented regarding voluntariness in determining the weight that you will give this statement.

"You are further instructed that the statement is not voluntary if, after charges have been preferred against the accused or while he was suspected of the offenses it was obtained from him through the interrogation or at the request of a person subject to the Uniform Code of Military Justice, or at the request of a person not subject to the Uniform Code of Military Justice, when he was conducting an official military investigation or while he was acting as an instrument of the military and if he did not, in accordance with Article 31b, of the Uniform Code of Military Justice, in those circumstances, first inform the accused of the nature of the accusation, advise him that he did not have to make any statement regarding the offense of which he was accused or suspected, and that any statement made by him might be used as evidence against him in a trial by court-martial. The issue with respect to whether a warning and advice was required and given in accordance with Article 31b and which you must finally decide as it relates to voluntariness of the out-of-court statement of the accused in this case is this.:

"Was the statement, although obtained by a person who was not subject to the Uniform Code of Military Justice, obtained either during an official military investigation or by a person who was not subject to the Uniform Code of Military Justice while acting as an instrument of the

538

military, or was it obtained by one who was subject to the Uniform Code of Military Justice. In either of those three circumstances, if you find that the warning under Article 31b was not given and you are not satisfied beyond a reasonable doubt that it was given and the accused advised in accordance therewith, you must reject it and disregard the statement as evidence in the case and give it no weight whatever. At the conclusion of the trial, and prior to your deliberations, I will again advise you with regard to voluntariness."

Substantially the same instructions were repeated by the law officer in his final advice to the court. A proposed instruction by the defense counsel on the issue of voluntariness is not attached to the record.

We agree with the board of review and the staff legal officer that the evidence raises issues concerning the sufficiency of the warning to Airman Murphy, the official character of Sergeant Rider's participation in the interview, and whether the written statement obtained by Agent Balge was the product of an earlier, improperly obtained admission. True it is that if Balge was conducting an independent investigation of crimes against the United States and interviewed accused solely for civilian Federal purposes, he was under no duty to advise him of his rights under Code, supra, Article 31. Balge is not a person "subject to this chapter" and, hence, has no responsibility to give the warning required by the Article. United States v Holder, 10 USCMA 448, 28 CMR 14; United States v Dial, 9 USCMA 700, 26 CMR 480; United States v Grisham, 4 USCMA 694, 16 CMR 268. But Sergeant Rider also participated in the interview, urged the accused to confess, and asked the "one particular question" which resulted in a complete, albeit conclusory, admission of guilt. There is no doubt that Rider was a person "subject to this chapter." Moreover, he was accused's immediate enlisted supervisor, expressed interest as such in the allegations against him, and participated in the interview on

that basis. While he stated that he was not then acting on behalf of the Air Force, and it is apparent he was not a military detective, the warning requirement of the Article, i. e., officiality, is not so narrowly limited. United States v Souder, 11 USCMA 59, 28 CMR 283; United States v Gibson, 3 USCMA 746, 14 CMR 164. In short, from his testimony, it was open to the court-martial to infer that Rider accompanied accused as his military superior and participated in the interrogation on that basis. As such, it would clearly become his duty to advise Murphy in accordance with Code, supra, Article 31.

As the board of review noted, the situation before us is not unlike that presented in United States v King, 14 USCMA 227, 34 CMR 7, wherein a Sergeant Foster, acting as a liaison officer, assisted a Texas juvenile investigator in questioning the accused in connection with allegations lodged against him with local civil authorities. In holding that the voluntariness of a statement subsequently obtained was thereby placed in issue, we declared, at page 231:

". . . Yet, Foster, an enlisted member of the Air Force, was clearly 'subject to this chapter,' and, suspecting accused of the very offenses with which he was ultimately charged, interrogated him concerning these crimes. As such, it was his duty under Code, supra, Article 31, to advise accused of his rights regardless of whether he was taking a statement on behalf of the Air Force or the Texas authorities. The very words of the enactment command it, and the reasoning which led us to exempt civilians from its requirements unless they were acting on behalf of the military cannot be perverted into an exemption for him simply because he may have been acting on behalf of local authorities. Indeed, the record demonstrates this was a joint military-civilian investigation in which Foster questioned the accused while the Assistant Provost Marshal and Darland listened to the interview from an adjoining room. We hold, therefore, that it was erroneous to advise the court-

martial there was no duty on Sergeant Foster to inform the accused of his rights if he was interrogating King on behalf of the civil authorities."

From the evidence here presented, the court members likewise might have concluded that Sergeant Rider was acting in his official capacity as Murphy's superior noncommissioned officer and was participating in the investigation on behalf of the military just as Agent Balge was acting for the Treasury Department. As such, it would undeniably have been his duty to advise the accused of his rights under Code, supra, Article 31, at the outset of the interrogation. United States v King, United States v Souder, both supra; United States v Gorko, 12 USCMA 624, 31 CMR 210.

In like manner, we reject the argument that compliance with Article 31 was proved by the nature of the warning delivered by Agent Balge. As the board noted, the evidence is in conflict as to whether it was given before or after accused declared his guilt to Sergeant Rider. As such, a strong question would be raised concerning whether the later, written statement to Balge

and delivery of the pass were the products of an earlier, unwarned confession. United States v Askew, 14 USCMA 257, 34 CMR 37; United States v Haynes, 9 USCMA 792, 27 CMR 60.

Turning to the law officer's instructions, it is clear they were not tailored to the contentions of the accused as developed by the evidence. United States v Acfalle, 12 USCMA 465, 31 CMR 51; United States v Smith, 13 USCMA 471, 33 CMR 3; United States v Askew, supra; United States v Tanner, 14 USCMA 447, 34 CMR 227. We reiterate our determination that there be "a meaningful submission of the interrelationship between the evidence and the law to the court-martial." United States v Tanner, supra, at page 451. As such was not done here, the findings of guilty must fall.

The certified questions are answered in the affirmative, and the decision of the board of review is affirmed. The record of trial is returned to The Judge Advocate General of the Air Force for action not inconsistent with this opinion.

Chief Judge QUINN and Judge KILDAY concur.