### UNITED STATES

v.

**Daniel BAXTER, 339 46 3951, Lance Corporal E–3, U. S. Marine Corps.**

### NCM 76 2493.

U. S. Navy Court of Military Review.

Sentence Adjudged 2 Aug. 1976.

Decided 7 Feb. 1977.

Before MURRAY, MALLERY and GREGORY, JJ.

MURRAY, Senior Judge:

Tried to a special court-martial by judge alone, the appellant was convicted, contrary to his pleas, of wrongful possession, sale, and transfer of phencyclidine in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The appellant was sentenced to confinement at hard labor for five months, reduction to pay grade E–1, forfeiture of $200.00 pay per month for five months, and a bad conduct discharge. The convening and supervisory authorities approved the findings and sentence.

On 9 November 1976, by supplementary court-martial order, the supervisory authority remitted the unexecuted portion of the sentence to confinement at hard labor.

The appellant assigns four errors for consideration by our Court:

### I

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY ADMITTING INTO EVIDENCE PROSECUTION EXHIBITING 2, WHICH WAS THE PRODUCT OF AN ILLEGAL SEARCH AND SEIZURE AND WAS TAKEN IN VIOLATION OF THE APPELLANT'S RIGHT AGAINST SELF–INCRIMINATION AND IN VIOLATION OF APPELLANT'S RIGHT TO COUNSEL.

### II

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY VIRTUE OF THE DEFENSE'S FAILURE TO:

A. OBJECT TO THE ADMISSIBILITY OF PROSECUTION EXHIBIT 2; AND

B. PRESENT ANY CHARACTER TESTIMONY IN EXTENUATION AND MITIGATION OR MAKE ANY ARGUMENT ON SENTENCE.

### III

THE EVIDENCE OF RECORD IS INSUFFICIENT TO SUSTAIN THE FINDINGS OF GUILT.

LT Paul C. Hurdle III, JAGC, USNR, Appellate Defense Counsel.

LT Patrick A. Fayle, JAGC, USN, Appellate Government Counsel.

## IV

### THE SEVERE SENTENCE IN THE CASE *SUB JUDICE* IS INAPPROPRIATE IN LIGHT OF THE EVIDENCE OF RECORD.

Our disposition of the case with respect to Assignments of Error I and II renders it unnecessary to address the remaining assignments.

### I and II

The record of trial reflects that the appellant had allegedly sold phencyclidine to an undercover CID agent, Staff Sergeant E. L. Vaughn, USMC, on 21 April 1976. On 14 June 1976, almost two months later, Vaughn interrogated appellant concerning the alleged offense. After being properly advised of his rights under Article 31, Uniform Code of Military Justice and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), the appellant indicated, orally and in writing, that he desired an attorney. Nevertheless, Vaughn continued to interrogate him. After the appellant indicated he desired counsel, but before counsel was made available to him, Vaughn inquired as to whether appellant had a drug-container in his locker. Vaughn had already apprised appellant of the fact that he was suspected of possession, transfer and sale of drugs. Vaughn also told appellant that he already had the commanding officer's authorization to search appellant's locker, and would do so, regardless of appellant's response. Appellant answered in the affirmative and allegedly "consented" to a search of his locker. A subsequent search produced the item in question, which is purported to be "a cigarette container . . . for roller papers." [R. 36].

At trial, during the government's case-in-chief, civilian defense counsel cross-examined Vaughn and CID agent Staff Sergeant Crawford extensively on the "consent" search. Then an interesting colloquy took place concerning the admissibility of the exhibit seized by CID agent Vaughn allegedly as a result of the "consent" search:

MJ: Well, I think it has become an issue and I am going to give a fifteen minute recess for the purpose of research for argument and I am going to state right now that some of the problems I see and ask counsel if they could please at some time during our recess to direct their argument to this particular facet at some point. I am not saying it is limited to that, but one, it appears that after the accused had indicated he wanted advice of counsel that at one point they photographed and fingerprinted him, I see no problem with that—they went further and asked his permission to search his quarters then received a consent form from him. The two issues I am extremely interested in is, one, could they do that in view of the fact that he had asked for counsel, and when I saw that, in asking a man for consent to search in effect questioning him and is it interrogation and is his signing of the consent form a statement and did they, in fact, receive a statement from the accused or did they, in fact, receive simply a consent form, which is not a statement? And what effect that may have had on the admissibility of the consent. Alright.

IC: Your Honor, I was going to raise another issue and probably it would tie in with your second issue, that is the right to counsel as opposed to the Fifth Amendment and the Fourth and Sixth, and I am wondering if that is also in the court's mind?

MJ: Definitely. Obviously. Alright? I will call a fifteen minute recess, because I would like to do a little research, so I can familiarize myself with that area. I recognize your problems, Lieutenant Gross. We will recess this court until eleven-fifteen. Lieutenant Gross is a change-of-command officer and we are going to have to recess this court at twelve-thirty. Hopefully, we will be able to get at least this issue concluded prior to twelve-thirty. Alright, the court's in recess until eleven-fifteen. No, cancel that . . .

DC: We withdraw the objection to the admissibility of the case. No. We do not desire to argue the issue. We are desirous of the trial going forward as quickly as possible.

MJ: Prosecution Exhibit 2 for identification is admitted into evidence, the words "for identification" will be deleted and a photographic copy of the exhibit will be included in the record of trial at the conclusion of trial. Now, again, I impress upon, defense counsel, I did not mean to suggest you waive your rights to an extremely interesting issue.

IC: While it may be an extremely interesting issue, it is not our defense.

MJ: Very well, in view of the defense counsel's remarks and opening statement, I realize that this was not the issue that was to be litigated, so I certainly don't question your decision. I just want to make sure that you realize that I was not trying to rush you into anything at this point.

The defense tactics apparently called for *alibi* as the main thrust of its case, and for reasons that are far from clear from this record, the defense chose to withdraw from any challenge to the admissibility of prosecution Exhibit 2, which was obtained by means of questionable conduct on the part of the CID agent, Vaughn. The search for and seizure of the exhibit is circumscribed by circumstances that clearly raise issues with respect to a violation of the appellant's rights under the Fourth, Fifth, and Sixth Amendments to the United States Constitution. We are at a loss to appreciate how the defense counsel could withdraw from his challenge to the evidence on these grounds, since the exhibit (prosecution #2), although not the drug itself which the appellant was convicted of possessing, selling, and transferring, was so closely related to the offenses of wrongful possession and trafficking in drugs, that its harmful effect cannot be ignored. In addition, it is strongly corroborative of the testimony of the key prosecution witness, Agent Vaughn, and its *potential impact on the trier of the facts* is patent.

Later, in their case-in-chief, the defense called a number of witnesses to establish the defense of alibi; *i. e.*, that appellant was not present at the time and place of the alleged offense. Apparently at this earlier juncture of the proceedings, defense counsel, in spite of extensive inquiry into the search and seizure issue and Judge Ouellette's *sua sponte* direction to research and argue the issue, incorrectly decided that objection to the search and seizure could not be raised consistent with the alibi defense even before a military judge sitting alone. It is unclear from the record what, if any, effect the time pressures for the change of command ceremony had on the defense's desire for "the trial going forward as quickly as possible," but it does raise an additional spectre of evil and supports the question raised as to the adequacy of counsel.

The government contends that the failure to object to the admission of the evidence (Exhibit #2) resulted in a waiver of the right to contest the admissibility thereof on appeal unless a clear injustice is present, citing *United States v. Walters,* 22 U.S.C.M.A. 516, 48 C.M.R. 1 (1973); *United States v. Cross,* 14 U.S.C.M.A. 660, 34 C.M.R. 440 (1964); *United States v. Webb,* 10 U.S.C.M.A. 422, 27 C.M.R. 496 (1959); *United States v. Hooper,* 9 U.S.C.M.A. 637, 26 C.M.R. 417 (1958); and *United States v. Dupree,* 1 U.S.C.M.A. 665, 5 C.M.R. 93 (1952).

In *Dupree supra,* the High Court laid the groundwork for this rule, but was careful to recognize an exception to the general rule where the facts and circumstances surrounding the search are placed on the record and where "plain error" is shown on those facts and the judge should have suppressed the evidence *sua sponte,* or where failure to object was due to inadequacy of representation by defense counsel and failure to review the issue would result in a miscarriage of justice. *United States v. Dupree,* 1 U.S.C.M.A. 665, 5 C.M.R. 93 at 98.

In the case *sub judice* there is ample evidence on the face of the record to exam-

ine the question as to the search and seizure on appeal notwithstanding a lack of specific objection on the trial level, which lack of objection goes directly to the heart of the issue as to adequacy of counsel. We do not suggest that counsel sought an unfair tactical advantage (*United States v. Mundy,* 2 U.S.C.M.A. 500, 9 C.M.R. 130 (1953)), but rather that counsel failed to appreciate fundamental aspects of the law of search and seizure, and the right to challenge the evidence while raising a defense of alibi at the same time. This is exacerbated by the fact that the rights involved are fundamental constitutional rights under the Fourth, Fifth and Sixth Amendments.

In *United States v. Martinez,* 16 U.S.C. M.A. 40, 36 C.M.R. 196 (1966), the High Court ruled on a search and seizure issue raised for the first time on appeal, and it chided the defense for failure to object to the evidence's admissibility at trial.

In *United States v. Hendrix,* 21 U.S.C. M.A. 412, 45 C.M.R. 186 (1972), trial defense counsel failed to object to admissibility of a letter, a pistol and marijuana on the basis of illegal search and seizure, choosing instead to rely on a *scienter* defense. Appellant raised the search and seizure issue for the first time on appeal. The Court cited the exception to the *Dupree* rule and addressed the issue of legality of the search, stating (at 191):

> We have no way of knowing why defense counsel did not contest the issue. [T]he existence of probable cause to search is highly questionable. . . .
> But even if the search were legal, we have no hesitancy in holding that the seizure . . . was clearly beyond the authorized scope of the search and, hence unlawful.

Other Courts of Military Review have invoked the exception to the *Dupree* rule to prevent injustice. In *United States v. Karo,* 46 C.M.R. 633 (A.C.M.R.1972), trial defense counsel did not object to admission into evidence of heroin on the ground of illegal search and seizure. The Court, however, stated that invocation of the waiver rule would produce a manifest miscarriage of justice. The Court held (at 634):

The appellate defense counsel asserts that the vials and heroin were seized from accused's presence in violation of his right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution. Further, he contends that this case is unusual and abnormal enough that the waiver doctrine should not apply. We agree.

The Court found the search and seizure to be illegal, set aside the findings and dismissed the charges. *See also United States v. Haller,* 43 C.M.R. 461 (A.C.M.R.1970). In *United States v. Peurifoy,* 47 C.M.R. 242 (A.F.C.M.R.1973) the Court recognized the *Dupree* rule but was nevertheless constrained to pass on the legality of a search (footnote 1 at 244). In *United States v. Heflin,* 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975), trial defense counsel failed to properly object at trial to a record of previous convictions. The Court held the doctrine of waiver inapplicable, stating (at 507, 50 C.M.R. at 646, 1 M.J. at 133, per Chief Judge Fletcher):

> We view the waiver question somewhat differently. The approach adopted in *Warren* [*United States v. Warren,* 49 C.M.R. 396 (A.C.M.R.1974)], [holding that failure to object waives appellate consideration] unduly tends to relieve the trial bench of its primary judicial responsibility to assure that a court-martial is conducted in accordance with sound legal principles. *United States v. Graves,* 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975). We believe the Court of Military Review has misinterpreted the affirmative waiver concept to which we alluded in *Pinkney* [*United States v. Pinkney,* 22 U.S.C.M.A. 595, 48 C.M.R. 219 (1974)]. An affirmative waiver issue arises where a matter intentionally is left in dispute at the trial level in order to gain a tactical advantage either at trial or subsequently on appeal. *Cf. United States v. Mundy,* 2 U.S.C.M.A. 500, 504, 9 C.M.R. 130, 134 (1953). Thus, in order to conclude that the defense counsel's nonfeasance . . . enabled him to gain such a tactical ad-

vantage, a necessary prerequisite would be some evidence that his failure to object left the finality of the previous convictions unresolved at the trial level. Such was not the case here.

In the case *sub judice*, as noted above, civilian defense counsel delved into the search issue at length, and initially formally objected on the record [R. 39]. The trial judge called a recess, stated the issues, directed that counsel research and prepare arguments on the issues, *sua sponte* [R. 39]. Civilian counsel then stated another ground for his objection (Sixth Amendment right to counsel; R. 40), with which the judge agreed. In view of the factual data placed on the record, the search as a matter of law was subject to serious challenge.

■ In addition to the duty of trial defense counsel to make timely objections, there exists a coequal duty of the trial judge to exclude evidence if the proper grounds for exclusion are obvious on the record. In *United States v. Graves,* 23 U.S. C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975), trial defense counsel had failed to object to voluntariness of appellant's confession. The Court held the doctrine of waiver at the appellate level inapplicable, stating (at 437, 50 C.M.R. at 396, 1 M.J. at 53):

> The passive waiver concept properly has been restricted to actions of trial defense counsel which leave appellate tribunals with insufficient factual development of an issue necessary to resolve a question of law raised on appeal. Those considerations are not present in determining whether a particular instruction should have been given in this case for the record itself provides the evidence necessary to resolve the question.

In *United States v. Morales,* 23 U.S.C. M.A. 508, 50 C.M.R. 647, 1 M.J. 87 (1975), trial defense counsel interposed no objection to several prosecution exhibits. The Court held that since the government exhibits demonstrated an absence of a sound basis for admissibility, the trial judge should have excluded them despite the ab-

sence of objection. *See also United States v. Sampson,* 23 U.S.C.M.A. 532, 50 C.M.R. 671, 1 M.J. 91 (1975).

In *United States v. Brunious,* 49 C.M.R. 102 (N.C.M.R.1974), this Court held, in a case predating *Helfin, supra,* that failure of the trial defense counsel to object to the admission of a prior consistent statement (hearsay) did not waive the issue on appeal. The test for prejudicial error was held to be whether the inadmissible evidence had *a measurable impact* on the findings or the sentence; however, due to disposition of the case on another ground, the issue of prejudice was not reached.

In the instant case, the defense's failure to object came after two prior objections and, inexplicably, as a recess was about to be called, in order that the trial might go "forward as quickly as possible." Even at that point the judge stated, "I impress upon you, defense counsel, I did not mean to suggest you waive your rights to an extremely interesting issue." (R. 40).

■ We find that adequate grounds exist in this instance to invoke the exception to the general waiver doctrine. The issue of the search and seizure should have been fully litigated and ruled upon at the trial level. Due to what appears to be a failure of the trial judge to take the lead in this regard after what appears to be inadequate representation by defense counsel on the trial level, the issue was not properly resolved and the questionable evidence was admitted. Such admission under those precise circumstances was palpably prejudicial to the rights of the appellant to a fair and impartial trial. We will not decide at this point the legality of the search and seizure, but because we do find that the appellant was prejudiced by a failure to fully resolve the issue at trial, and particularly because of a serious error of counsel which clearly raises the question of adequacy through a failure to present matters which could have materially affected the outcome of the trial,[1] the findings cannot stand and a rehearing is in order.

---

1. In addition to the issue surrounding the search and seizure and admission of prosecu-

tion exhibit # 2, we are disturbed by the inferences to be drawn from the suggestion of influ-

Accordingly, the findings and sentence are set aside, and the record is returned to the Judge Advocate General for forwarding to the convening authority. A rehearing may be ordered.

Judge GREGORY concurs.

MALLERY, Judge (dissenting)

In *United States v. Heflin, supra,* our judicial superiors, the Court of Military Appeals, held that the failure of the defense to object to the admission of certain inadmissible evidence at trial did not constitute a waiver. The *Heflin* case seems to eliminate, or at least seriously curtail, the application of the principle of passive waiver. However, the Court in that case tacitly affirmed the continuing existence of the principle of affirmative waiver in the following words:

> An affirmative waiver issue arises where a matter intentionally is left in dispute at the trial level in order to gain a tactical advantage either at trial or subsequently on appeal. *Cf. United States v. Mundy,* 2 U.S.C.M.A. 500, 504, 9 C.M.R. 130, 134 (1953).

I interpret the actions of the trial defense counsel in the case, *sub judice,* differently than does my brother, Senior Judge Murray. The admissibility of Prosecution Exhibit 2 was clearly placed in issue at trial. In my opinion, the trial defense counsel must have understood the significance of that issue. Did his withdrawal of his objection to its admission constitute inadequate representation? I think not. The results emanating from this tribunal seem to belie that conclusion. It seems more reasonable to conclude that the defense had a bifurcated approach. Their principal defense at trial was alibi. However, the trial defense counsel must have realized that, if the defense of alibi failed, he stood an excellent chance of winning on appeal because of the erroneous admission of Prosecution Exhibit

2. In fact, if that is what he did think, he turned out to be right.

In my opinion, the issue of the admissibility of Prosecution Exhibit 2 was " . . . a matter intentionally . . . left in dispute at the trial level in order to gain a tactical advantage . . . on appeal. . . ." *United States v. Heflin, supra.* Therefore, I would invoke an affirmative waiver in this case.

I would affirm the findings and sentence, as approved on review below.

---

ence exerted by the CID agent over the prosecution witness, Shallow, and by the modus operandi of the CID agent in pursuing the matter as a whole. An aura of pervasive questionability floats over the entire operation of Agent Vaughn in this matter, and his methodology should have been explored in depth by counsel at trial.