UNITED STATES

v.

Captain William S. KELLEY, 252–60–2799, US Army, Company B, 1st Battalion, School Brigade, United States Army Signal School, Fort Gordon, Georgia.

CM 434305.

U. S. Army Court of Military Review.

2 Feb. 1977.

Ralph Herrod, Esquire, CPT Ralph E. Sharpe, JAGC, MAJ Richard J. Goddard, JAGC, LTC John R. Thornock, JAGC, COL Alton H. Harvey, JAGC, Appellate Counsel for the Accused.

CPT Russell S. Estey, JAGC, CPT Lee D. Schinasi, JAGC, COL Thomas H. Davis, JAGC, Appellate Counsel for the United States.

Before COOK, DRIBBEN and DeFORD, Appellate Military Judges.

## OPINION OF THE COURT

DRIBBEN, Judge:

Appellant was convicted, contrary to his plea, at a bench trial general court-martial of willful and unlawful removal of a public record in violation of Article 134, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 934. The approved sentence is noted above.

On 4 September 1975, at the Army Military Personnel Center (MILPERCEN) in Alexandria, Virginia, Captain Kelley examined his Official Military Personnel Records Jacket (OMPRJ) which was permanently kept on file there. The OMPRJ was temporarily released to appellant for examination by Staff Sergeant Dey, the noncommissioned officer in charge of the Records Review Unit. Prior to releasing the file to appellant, Sergeant Dey observed and documented the fact that Captain Kelley's OMPRJ contained one Record of Proceedings under Article 15, UCMJ, a DA Form 2627–1. This action had been imposed upon appellant as an enlisted man in 1966.

Shortly after receiving the file, Captain Kelley asked Sergeant Dey about the presence of the Article 15 action therein. Cap-

tain Kelley was very concerned at finding the document in his file as he did not believe it should have been there. After Sergeant Dey explained that the document was in the file pursuant to Army regulations, appellant returned to the table at which he was reviewing his records.

Soon thereafter, Captain Kelley returned the OMPRJ by leaving it on the receptionist's desk and left the records reviewing office. Upon examination of the file the receptionist observed that the Article 15 was missing. She then reported that fact to Sergeant Dey, who after personally ascertaining that the Article 15 was missing, immediately sought to locate appellant concerning the missing document. Sergeant Dey found appellant still inside the building, but at another office unrelated to Sergeant Dey's area of responsibility.

After locating appellant, Sergeant Dey discussed the matter of the missing Article 15 action with him. More specifically Sergeant Dey testified:

"I approached him about it and asked him where it was and he told me he didn't have it anymore, that he no longer had it, and I asked him where it was and the response was, 'well I don't have it anymore.' He offered no explanations as to where it was, but he just told me he didn't have it anymore. On the way back, we discussed it a little bit, just talked about it in general, you know, nothing especially. (sic). He indicated to me that the reason he did it was because things were messing up so bad, that he had some problem, something to do with the Regular Army, I don't know what, whether it was promotion or a commission or whatever at that time, and that he was facing a RIF next year, so he didn't have much to lose, so it was worth a try. Those were his exact words, 'it was worth a try.'"

Sergeant Dey asked appellant to accompany him to the office of his supervisor, Lieutenant Colonel Koehnke,[1] where Sergeant Dey explained to the latter what had happened. Sergeant Dey then left, leaving appellant with Lieutenant Colonel Koehnke. There is no evidence that Sergeant Dey ever advised appellant of his rights under Article 31, UCMJ, 10 U.S.C. § 831.

After being advised of his rights under Article 31, and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967) by Lieutenant Colonel Koehnke, appellant, in response to the former's question admitted that he had removed the Article 15 from his file and that it was either gone or destroyed. Ultimately, a report of the incident, including statements from Lieutenant Colonel Koehnke and Sergeant Dey, was sent to appellant's commanding officer at Fort Gordon, Georgia.

At trial, appellant's defense counsel did not object to testimony regarding appellant's pretrial admissions. The matter was never raised. Appellant's defense was based upon his contention that he lacked the intent to commit the offense in question.

Of the numerous errors assigned by appellant, only his allegation that he was substantially prejudiced by admission into evidence of statements taken from him in violation of Article 31 by Staff Sergeant Dey warrants discussion.

Article 31, UCMJ, provides in pertinent part:

"(b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

\* \* \* \* \* \*

[1]. Lieutenant Colonel Koehnke was Chief of the Evaluation Report Branch, MILPERCEN, at that time.

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial."

## I

Whether Sergeant Dey should have given an Article 31(b) warning is the question we must address. In *United States v. Dohle*, 24 U.S.C.M.A. 34, 51 C.M.R. 84, 1 M.J. 223 (1975), Chief Judge Fletcher applied what might be called the "position of authority" test in order to determine who must give Article 31(b) warnings. He stated that:

"We are concerned with statements made by an accused or suspect in response to questions by a person, subject to the Code, who is in a position of authority over the accused or suspect. Where the questioner is in a position of authority, we do not believe that an inquiry into his motives ensures that the · protections granted an accused or suspect by Article 31 are observed. While the phrase 'interrogate, or request any statement from' in Article 31 may imply some degree of officiality in the questioning before Article 31 becomes operative, . . . the phrase does not also imply that nonpersonal motives are necessary before the Article becomes applicable. Indeed, in the military setting in which we operate, which depends for its very existence upon superior-subordinate relationships, we must recognize that the position of the questioner, regardless of his motives, may be the moving factor in an accused's or suspect's decision to speak. It is the accused's or suspect's state of mind, then, not the questioner's, that is important." 24 U.S.C.M.A. at 36, 51 C.M.R. at 86, 1 M.J. at 226.

Applying this test to the case *sub judice*, we find that Staff Sergeant Dey at the time and in the place where he questioned Captain Kelley about the missing Article 15, was not in a position of authority over appellant. Captain Kelley clearly had no duty to obey Sergeant Dey because of the latter's rank. Whatever authority, if any, Sergeant Dey may have had as the NCOIC of the Records Review Unit, that authority did not extend over a commissioned officer who had departed Sergeant Dey's area of operation and was in a different location, entirely unrelated to the physical locale where Sergeant Dey was expected to perform his duties. While Sergeant Dey's vigorous attempts to ascertain the whereabouts of records entrusted to his control were commendable, they did not serve to elevate his solely administrative activities and responsibilities to those of either an official investigator or a policeman with authority over a commissioned officer. Neither do we believe that appellant, at the time and place he was confronted by Sergeant Dey, could have reasonably believed that Sergeant Dey was in any position of authority over him.[2]

Chief Judge Fletcher's "position of authority" test was not joined in by Senior Judge Ferguson[3] and Judge Cook.[4] Therefore, we cannot currently conclude that *Dohle* overruled prior decisions of the Court of Military Appeals which applied the "official capacity" test in order to determine who must give Article 31(b) warnings to an accused or a suspect.

Under the "official capacity" test, the Court of Military Appeals has held that persons subject to the UCMJ must provide Article 31(b) warnings to an accused or a suspect only if they are acting in either a law enforcement or disciplinary capacity, except for those acting as undercover agents or informers. *See United States v. Beck*, 15 U.S.C.M.A. 333, 35 C.M.R. 305

2. *See* paragraph 171*b*, Manual for Courts-Martial, United States, 1969 (Revised edition).

3. Senior Judge Ferguson concurred in the result on the basis that the language of Article 31

should be applied literally. He expressly refused to concur with Judge Fletcher's test.

4. Judge Cook concurred in the result on the

(1965) and cases cited therein.[5] As Chief Judge Fletcher pointed out in *Dohle, supra,* at 24 U.S.C.M.A. 36, 51 C.M.R. 86, 1 M.J. 225–226 an examination of these cases reveals that the Court of Military Appeals has analyzed their facts to determine if the interrogator was acting officially or solely from personal motives, the subjective nature of which is often made more difficult by the questioner's multiple motives.

Our review of these cases reveals that the interrogators who were held to be acting in an official capacity were military law enforcement personnel,[6] or were performing guard duties over those whom they interrogated,[7] or were those having disciplinary authority over a suspect,[8] or an NCO serving as charge of quarters.[9] We remain unaware of any reported cases with facts similar to those of the case at bar.

We believe that Sergeant Dey's position, applying the "official capacity" test may be more aptly likened to that of Master Sergeant Derrickson in the case of *United States v. Cross,* 14 U.S.C.M.A. 660, 663, 34 C.M.R. 440, 443 (1964). There the Court of Military Appeals found that Sergeant Derrickson, acting as steward of an open mess, had no duty to give an Article 31(b) warning to the accused before inquiring whether he had thrown a beer bottle through the mess window. It held that the steward acted not as "a noncommissioned officer exercising disciplinary authority" or "as a law enforcement agent seeking assistance" but only "as a mess manager engaged in the ordinary discharge of his responsibility." Therefore, believing that appellant's

statements made to Sergeant Dey were properly admitted into evidence, we affirm.

## II

■ Captain William S. Kelley entered on active duty with the United States Army on 6 June 1966 after prior active duty service in the United States Air Force from 13 August 1956 through 13 August 1960. He was commissioned a Second Lieutenant on 24 August 1967 after completing Army Officer Candidate School. After successfully completing the Communications Officer's Course at Fort Sill, Oklahoma and airborne training he was assigned to the 82nd Airborne Division. After service with that Division as a communications officer and jungle training in Panama, he served in the Republic of Vietnam with the 173d Airborne Brigade from May 1968 for one year during which time he was promoted to First Lieutenant. He again thereafter served with the 82nd Airborne Division as a platoon leader, executive officer, and after promotion to Captain in 1969, as Division Artillery Signal Officer and as a Signal Company Commander. In 1970 he entered a college degree completion program, receiving a Liberal Arts Degree with a major in business economics and management in 1972. He then was assigned to Fort Gordon, Georgia. After successfully completing the Signal Officer's Advance Course at Fort Gordon, Georgia, Captain Kelley remained at that installation serving consecutively as a Project Officer, and as Assistant Chief and Chief of the Supply Division, 1st Battalion School Brigade, United States Army Signal School. Captain Kelley's

basis of *United States v. Beck,* 15 U.S.C.M.A. 333, 339, 35 C.M.R. 305, 311 (1965).

**5.** *See also* for a compilation and discussion of applicable cases Lederer, Rights Warnings in the Armed Services, 72 Mil.L.Rev. (1976) and Moyer, Justice and the Military, 52–204, 205 (1972).

**6.** *See, e. g., United States v. Hundley,* 21 U.S.C.M.A. 320, 45 C.M.R. 94 (1972); *United States v. Hart,* 19 U.S.C.M.A. 438, 42 C.M.R. 40 (1970); *United States v. Reynolds,* 16 U.S.C.M.A. 403, 37 C.M.R. 23 (1966); *United States v. Wilson,* 2 U.S.C.M.A. 248, 8 C.M.R. 48 (1953). *See also*

*United States v. Souder,* 11 U.S.C.M.A. 59, 28 C.M.R. 283 (1959).

**7.** *See, e. g., United States v. Carlisle,* 22 U.S.C.M.A. 564, 48 C.M.R. 71 (1973); *United States v. Beck, supra.*

**8.** *See, e. g., United States v. Harvey,* 21 U.S.C.M.A. 39, 44 C.M.R. 93 (1971); *United States v. Murphy,* 14 U.S.C.M.A. 535, 34 C.M.R. 315 (1964).

**9.** *United States v. Woods,* 22 U.S.C.M.A. 369, 47 C.M.R. 124 (1973).

awards and decorations include the Bronze Star Medal, the Army Commendation Medal (1st OLC), and Good Conduct Medals from both the Air Force and Army.

### III

In view of the nature of the offense of which appellant has been found guilty, we determine that the sentence is appropriate.

The findings of guilty and the sentence are affirmed.

Senior Judge COOK and Judge DeFORD concur.