UNITED STATES, Appellee

v

ANTHONY J. D'ARCO, Captain, U. S. Marine Corps, Appellant

16 USCMA 213, 36 CMR 369

No. 19,014

April 29, 1966

 

*Peter J. McGinn, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *F. Thomas O'Halloran, Esquire,* and *Captain L. G. Bohlen,* USMC.

*Major Paul F. Henderson, Jr.,* USMC, argued the cause for Appellee, United States.

## Opinion of the Court

KILDAY, Judge:

Convicted of four specifications of larceny of Government-owned building materials and three specifications of wrongful appropriation of a Government vehicle, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, the appellant was sentenced to dismissal from the service and a fine of $1,800.00. Intermediate appellate authorities affirmed the conviction but a Navy board of review disapproved the dismissal and affirmed only the fine.

We granted the appellant's petition for grant of review to consider whether he was properly warned and advised of what he was suspected prior to being questioned by a Federal Bureau of Investigation agent in regard to the charge and specifications upon which he was convicted.

It is at once apparent that our reso-lution of this question will depend upon the status of the FBI agent at the time he questioned the appellant; that is, was he then acting as an agent for the military or was he, as the Government contends, conducting an investigation, as a representative of an independent Federal bureau, of an alleged offense within that bureau's jurisdiction.

In the early case of United States v Grisham, 4 USCMA 694, 16 CMR 268, we pointed out that the provisions of Article 31(b), Uniform Code of Military Justice, 10 USC § 831,[1] are obligatory only upon persons subject to military law, although we therein warned the services that they could not escape the provisions of the article by having third persons act for them or on their behalf in crime detection work. See also United States v Dial, 9 USCMA 700, 26 CMR 480;

---

[1] *"No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he* does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial." [Emphasis supplied.]

United States v Holder, 10 USCMA 448, 28 CMR 14; United States v Smith, 10 USCMA 619, 28 CMR 185. Indeed, we have not hesitated to remand the matter for rehearing where the issue was raised and not properly instructed upon. United States v King, 14 USCMA 227, 34 CMR 7; United States v Murphy, 14 USCMA 535, 34 CMR 315. Cf. United States v Aau, 12 USCMA 332, 30 CMR 332.

In the case at bar, the agent testified that when he and his companion agent initially approached the appellant he identified himself as an agent of the Federal Bureau of Investigation and asked the appellant whether he was Captain Tony D'Arco of the Marine Corps. When the latter acknowledged that he was, the agent testified:

"... I then explained his rights to him, specifically that he was not required to answer any questions, that anything he said could be used against him in a court of law and that he could avail himself if he desired of legal counsel."

The agent then informed the appellant that he would like to ask him a few questions and when he was told to go ahead, "I asked him if he had any idea why we were there talking to him." At this point, defense counsel objected to any further testimony as to the conversation and on cross-examination developed that the FBI agent did not specifically inform the appellant he was suspected of an offense and the nature thereof. Thereupon counsel objected to testimony as to any statements made by D'Arco to the FBI agent on the ground that he was not properly warned. The law officer overruled the objection.

The record reflects that the FBI agent initiated his investigation of the appellant on September 23, 1964, following a telephone call from his office in San Diego. During this call the agent was advised by his supervisor in San Diego that the Los Angeles office of the FBI had telephonically notified the supervisor it was in receipt of information that the appellant was suspected of having wrongfully taken some building materials belonging to the Government from the Marine Corps Base at Twentynine Palms, California, for use in the construction of an addition to his residence in Carlsbad, California. He was directed to investigate the matter. The agent proceeded to the vicinity of the residence, the address of which he had been given by his office, and established a surveillance thereof. When he was subsequently joined by another agent, the two then proceeded to the front of the house, where they encountered the appellant. In reply to his query of the appellant as to whether he knew why the agents were there, the agent testified that the appellant replied, "yes . . . [m]isappropriation of government property."

At the termination of the interview which was conducted in the agent's automobile, the latter contacted his office by car radio and informed his supervisor of the results of his inquiry. At that time he learned a complaint had been filed and an arrest warrant issued. He thereupon placed the appellant under arrest and proceeded with his investigation.

The record contains a certified copy of the complaint and warrant of arrest issued by Russell R. Hermann, United States Commissioner, Los Angeles, California, on September 23, 1964. The complaint, based on an affidavit of Robert E. Sage, Special Agent, Federal Bureau of Investigation, charged Anthony D'Arco with violation of section 641, Title 18, United States Code, in that he "knowingly and wilfully stole and embezzled and converted to his own use approximately 16 boxes of rubber tiles, property of the United States having a value in excess of $100.00." The affidavit, filed by Agent Sage in support of the complaint, recites that "SA J. Clayton Taylor told me that a confidential informant, who has furnished information in the past which proved reliable, told Taylor that he witnessed the subject haul the property away in his automobile from the U. S. Marine Corps Base at Twenty-nine Palms, and that subject is going to take the property to Carlsbad, California."

On its face the above-related activities clearly portray the course of an investigation by the Federal Bureau of Investigation of a reported crime within its investigative jurisdiction, independent of military control. Appellate defense counsel, however, contend that since the Federal agents were investigating the alleged theft of military property from a military base by a member of the military, and such investigation was commenced pursuant to information received from another member of the military, the Federal agents had a duty to comply with that portion of Article 31 which requires that an accused be informed he is suspected of an offense and the nature thereof.

Indeed, a sergeant from the appellant's company testified that he was Agent Taylor's source of information. Based on what he had seen and heard in the company area, he contacted the agent on two separate occasions and informed him of what was going on. He was aware of the presence on base of a Provost Marshal but for undisclosed reasons declined to notify that office. Obviously, he acted in his capacity as a citizen and in no way can his calls be considered as official involvement of the military in this investigation.

In the absence of such official activity, we unhesitatingly hold that the actions of the Federal Bureau of Investigation in this case were completely independent of the military and hence the agents were not bound to comply with the provisions of Article 31 of the Code. The community of interest in the property, the site, and the people involved are incidental to our decision for we have here a situation involving concurrent jurisdiction (the civilian authorities under section 641, Title 18, United States Code, and the military under Article 121, Uniform Code of Military Justice, 10 USC § 921) wherein either authority can act independently of the other without conflict. While the warning given by the Federal Bureau of Investigation might not have been such as to completely satisfy the provisions of the Code, it was in accord with the Federal practice and, we believe, could not have been successfully objected to had this case been tried in the civilian jurisdiction. We are buttressed in our view that this was an independent investigation by the Federal Bureau of Investigation by trial defense counsel's argument on the legality of the search, following D'Arco's arrest, wherein he stated:

". . . I don't think there's any question but what the arrest here must be governed by the federal law inasmuch as on the evidence received, *the military has not entered into the picture whatsoever, at the present time."* [Emphasis supplied.]

As a final note, we advert to appellate defense counsel's assertion that since the Government has the burden of establishing that a proper Article 31 warning was given prior to introducing into evidence a pretrial statement of a person accused of crime, it has a similar burden to establish the existence of facts warranting a conclusion that an Article 31 warning need not be given. Counsel's reliance on our opinion in United States v King, supra, is in error. *King* is inapposite. In that case, the air policeman was uncertain as to whether he had informed the accused that anything he said could be used against him, although others testified to overhearing him give a complete and proper warning. Following his oral confession to the air policeman of the charged offense, King executed a written statement for a civilian official. We held that this latter statement stood on the same basis as the earlier oral admission and that it was error to instruct the court-martial there was no duty on the air policeman to inform the accused of his rights if he was not acting officially but merely as an agent or instrument of civilian authorities.

The short answer to counsel's contention is that where there is no duty to warn, the Government has discharged its burden when it presents evidence sufficient to establish that fact. That was done in this case.

The decision of the board of review is affirmed.

Chief Judge QUINN and Judge FERGUSON concur.