**Anthony Joseph D'ARCO**

v.

**The UNITED STATES.**

No. 42–68.

United States Court of Claims.

May 14, 1971.

————◆————

Fred W. Shields, Alexandria, Va., attorney of record, for plaintiff.

Charles M. Munnecke, Washington, D. C., with whom was Asst. Atty. Gen., L. Patrick Gray III, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

OPINION

DAVIS, Judge.

This unusual case revisits Marbury v. Madison, 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803)—not the magisterial close of Chief Justice Marshall's opinion declaring the judiciary's power to hold legisla-tion invalid for infringement of the Constitution, but the lesser-known opening section (on which the Chief Justice lavished many more words) establishing that William Marbury had been duly appointed by President John Adams a justice of the peace for the county of Washington, in the District of Columbia, even though his commission had been held back by President Jefferson. Like Mr. Marbury, the present claimant, Captain D'Arco, failed to receive the commission signifying his appointment, but unlike Mr. Marbury, we find that plaintiff was never elevated.

Anthony D'Arco was a career marine officer who became a captain in 1958. On October 6, 1964, the Secretary of the Navy (for the President) approved a list of marine officers, including Captain D'Arco, who had been selected for temporary promotion to major. On October 12th, his appointment as major was forwarded to him through his commanding officer; this was a recess or interim appointment pending action by the Senate. However, the commission was never delivered to plaintiff but was returned by his commanding officer on October 19th to Marine Corps headquarters. The reason was that the captain had been investigated for larceny, which resulted in charges against him for violating Articles 121 and 133 of the Uniform Code of Military Justice, through the theft of government building materials and wrongful appropriation of a government vehicle. On December 17th, after return of the commission but before the court-martial trial which had been ordered, the Secretary of the Navy approved this withholding of the commission. In January 1965, D'Arco was convicted by the court-martial and sentenced to dismissal and a fine of $1,800. In August 1965, the Board of Review approved only so much of the sentence as included the fine, and in April 1966 the Court of Military Appeals affirmed this decision. 16 U.S.C.M.A. 213. Executive clemency was refused.

Meanwhile, since plaintiff's name had not been withdrawn from the promotion

list transmitted to the Senate, that body confirmed his appointment to the temporary grade of major on February 8, 1965. No commission was prepared at that time because the court-martial review had not been completed, and no commission was ever issued. In August 1966, after the Court of Military Appeals had acted, the Secretary refused to approve the appointment which the Senate had confirmed and directed that the captain's name be removed from the list of officers recommended for temporary promotion to major. Plaintiff was so notified, and also that his recess appointment in October 1964 had expired "without delivery and same being effected." [1]

Plaintiff continued on duty as a captain until he suffered combat injuries in Vietnam which led to his being placed, in April 1967, on the Temporary Duty Retirement List. He filed suit here in January 1968, claiming the pay (active and retired) of a major. After his petition in this court he asked the Board for Correction of Naval Records to give him the rank of major; this application was denied without a hearing.

There were two possible appointments to the majority—a recess or interim appointment in October 1964, and an appointment after the Senate confirmation in February 1965—and we consider them separately. For the first, a commission was actually prepared, signed, and forwarded for delivery to plaintiff. Under the regulations, his commanding officer had the right to withhold delivery of the promotion "for serious cause." [2] That degree of cause obviously existed here in view of the inquiry then going on which could well lead to court-martial trial and dismissal from the service. Upon receipt of this report, the Secretary approved the withholding of the commission until completion of the court-martial proceedings. If the Secretary still had control over the appointment, his action was certainly reasonable. The Marine Corps would not ordinarily wish to promote an officer guilty of theft and wrongful appropriation of public property; on the other hand, to withhold the appointment definitively might harm plaintiff if he was later acquitted or a conviction quashed.

Plaintiff argues that, under the rule of Marbury v. Madison, *supra*, the Secretary no longer had any power over the appointment since the commission had already been signed and issued.[3] Marbury had been nominated by President Adams for a five-year term as justice of the peace; the Senate had confirmed the nomination; the President signed the commission at the very end of his term of office and the seal of the United States was affixed; but with the coming in of the Jefferson administration the new Secretary of State (James Madison) refused to deliver the paper. The Supreme Court held that Marbury was lawfully appointed when President Adams signed the commission, and that the failure to transmit the document had no operative effect.

The critical distinction for the present case is expressly pointed out in the *Marbury* opinion: "as the law creating the office, gave the officer a right to hold for five years, independent of the execu-

---

1. The recess appointment would have expired on October 23, 1965, the date on which the next session of the Senate ended (111 Cong.Rec. 28436 (1965)).

2. Paragraph 1420–2a of the Marine Corps Manual (1961) provided: "Action toward withholding an officer's promotion should be considered only for serious cause, for example involvement in an incident which raises doubt as to his moral integrity, adversely reflects on his professional ability, or results in his being recommended for trial by court-martial. In such cases commanders should not deliver the promotion, but report the circumstances to the Commandant of the Marine Corps."

3. All agree that, in signing the commission, the Secretary was validly acting for the President. See Brownfield v. United States, 148 Ct.Cl. 411, 416–417 (1960); *cf.* Congress Constr. Corp. v. United States, 314 F.2d 527, 530–531, 161 Ct. Cl. 50, 55–56, cert. denied, 375 U.S. 817, 84 S.Ct. 53, 11 L.Ed.2d 52 (1963); 7 Op.Atty.Gen. 453 (1855).

tive, the appointment was not revocable, but vested in the officer legal rights, which are protected by the laws of his country" (1 Cranch (5 U.S.) 162, 2 L.Ed. 60); "[w]here an officer is removable at the will of the executive, the circumstance which completes his appointment is of no concern, because the act is at any time revocable; and the commission may be arrested, if still in the office. But when the officer is not removable at the will of the executive, the appointment is not revocable, and cannot be annulled" (1 Cranch (5 U.S.) at 162). See, also, 1 Cranch (5 U.S.) at 156, 157, stressing that the Court was dealing with an office not revocable at will. This contrast between the status of officers removable at will and those with tenure has been reflected in the jurisprudence of the Attorney General. See 12 Op.Atty.Gen. 304, 305–06 (1867).

Captain D'Arco's temporary appointment to major, unlike William Marbury's justiceship, was terminable at will. Section 5779 of Title 10 of the U. S. Code provides that "The President may terminate any temporary appointment made under the preceding sections of this chapter" [which includes the sections under which plaintiff was promoted, see 10 U.S.C. §§ 5769, 5778 (1964)]. *Cf.* Brownfield v. United States, *supra*, 148 Ct.Cl. 411, 415, 417 (1960). Under this authority, the Secretary lawfully acted for the President (Brownfield v. United States, *supra*, 148 Ct.Cl. at 416–417) when he withheld the commission for the recess position, thereby validly refusing under the rationale of Marbury v. Madison to make the appointment. Plaintiff did not become a major at that time.

It follows *a fortiori* that plaintiff was likewise not promoted when or after the Senate confirmed the nomination in February 1965. No commission was thereafter prepared, signed, or issued. Chief Justice Marshall's reasoning teaches that, even if the office had been for a term of years, like Marbury's, the executive could still refuse to complete the appointment, after Senate con-

firmation, by failing to prepare or sign the commission. 1 Cranch (5 U.S.) at 155–156, 157, 162. See 4 Op.Atty.Gen. 217 (1843); 9 Op.Atty.Gen. 297 (1859); 12 Op.Atty.Gen. 32, 42 (1866); 12 Op. Atty.Gen. 304 (1867); 13 Op.Atty.Gen. 44 (1869); 25 Op.Atty.Gen. 591, 593–94 (1906); 29 Op.Atty.Gen. 254 (1911); 36 Op.Atty.Gen. 382, 384–85 (1931); 27 Comp.Dec. 861, 862 (1921); 17 Comp. Gen. 249, 252 (1937); 41 Comp.Gen. 43, 46 (1961); *cf.* Jouett v. United States, 28 Ct.Cl. 257 (1893). Since the office here was not of that kind, but was revocable at will, the Secretary (acting for the President) plainly had no less authority. Indeed, the statutes specifically provide that the President "may remove the name of any officer from a promotion list." 10 U.S.C. § 5777(a) (1964). This implies that he (and the Secretary for him) may do so at any time before the appointment is consummated.

The plaintiff never became a major and is not entitled to recover. His petition is dismissed.