**Francis J. McCARTHY, Jr.**

**v.**

**The UNITED STATES.**

**No. 478–81C.**

United States Claims Court.

Feb. 12, 1985.

John A. Everhard, Falls Church, Va., for plaintiff. King & Everhard, P.C., Falls Church, Va., of counsel.

Sandra P. Spooner, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, Washington, D.C., for defendant. Colvin W. Grannum, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

This military pay case comes before the court on plaintiff's motion for summary judgment and defendant's motion to dismiss or in the alternative, its cross-motion for summary judgment. Both parties contend that no genuine issue of material fact exists and that they are entitled to judgment as a matter of law. Plaintiff primarily contends that, due to an excessive delay, his removal from the promotion list to the

grade of temporary lieutenant colonel was invalid. He maintains that the decision of the Air Force Board for Correction of Military Records (AFBCMR) denying him monetary relief based on this improper removal was arbitrary and capricious. As a result, plaintiff claims that he is entitled to the grade and pay of a lieutenant colonel from March 1, 1979, the initial effective date of his promotion, to the date of judgment. Defendant, on the other hand, maintains that plaintiff's removal was technically valid and within the discretionary power of the executive branch with which this court should not interfere. In addition, defendant contends that the AFBCMR decision denying plaintiff relief was not arbitrary and capricious and was supported by substantial evidence.

After a thorough review of the submitted administrative record, consideration of the parties' briefs and evidentiary submissions, oral argument having been waived by the parties, the court concludes that plaintiff is entitled to back pay as a temporary lieutenant colonel from March 1, 1979, until May 15, 1980, when he was validly removed from that position by the President of the United States. Therefore, plaintiff's motion for summary judgment is granted in part and denied in part; defendant's motion to dismiss is denied; and defendant's cross-motion for summary judgment is granted in part and denied in part.

## I.

While serving as a temporary major, plaintiff was selected to be promoted to the grade of temporary lieutenant colonel pursuant to 10 U.S.C. § 8442 (1976) by the 1977 promotion board which convened March 1, 1977, and adjourned on September 2, 1977.[1] This selection for promotion was approved by the Secretary of the Air Force. The Secretary subsequently transmitted plaintiff's name to the President of the United States with the recommendation that plaintiff be nominated by the President for promotion. The President approved the recommendation of the Secretary and nominated plaintiff for promotion on February 3, 1978. The President then submitted plaintiff's name to the United States Senate for confirmation. On February 6, 1978, the Senate confirmed plaintiff's promotion which was projected to take place on March 1, 1979. The President then submitted plaintiff's appointment to the Secretary of the Air Force.

After plaintiff's promotion was completely approved, it came to light that the promotion board had failed to consider a referral Officer Efficiency Report (OER) which covered the period from December 3, 1976, to August 30, 1977.[2] This referral OER reflected that plaintiff had received a letter of reprimand for an incident of misconduct which occurred on July 21, 1977. Appar-

---

1. The objectives of the Temporary Promotion Program are set out in Air Force Regulation (AFR) 36–89 ¶ 1–2 as follows:

"The Air Force temporary promotion program must ensure that there are enough officers in each grade to carry out the mission. The selection process should ensure that the best qualified officers are promoted to positions of responsibility and authority. Promotion is not a reward for past service, but is an advancement to a position of greater responsibility, based on past performance and future potential. While enough officers should be promoted to satisfy the needs of management, the promotion program must also provide a career incentive that offers opportunity for advancement at reasonably spaced intervals to attract officers to an Air Force career. Active duty promotions should be relatively stable and provide each year group of officers comparable opportunity. Objectives of the temporary promotion program are to:

"a. Promote officers of the desired quality and quantity through a competitive promotion system.

"b. Provide for below-the-zone promotions to identify and advance officers with exceptional ability and potential early in their careers.

"c. Promote officers in sufficient numbers to each grade, as vacancies occur, to maintain the strength in each grade.

"d. Provide opportunities for promotion at spaced intervals to maintain a selective flow of officers through the grades in visible advancement patterns that avoid stagnation."

2. A referral OER is an Officer Efficiency Report that is of such a nature that it could substantially damage an officer's career. Therefore, it is referred to the officer to allow him to rebut the allegations against him.

ently, the promotion board also failed to consider another incident of misconduct plaintiff was allegedly involved in on September 9, 1977. This incident apparently resulted in a second reprimand. These incidents also precipitated the establishment of an Unfavorable Information File for plaintiff. When it was determined that the promotion board had failed to consider this information about plaintiff, plaintiff's commander, Lieutenant General George G. Loving, Jr. recommended a delay in promotion on November 21, 1977. This delay was subsequently approved by major command CINCPACAF on February 17, 1978. This recommendation for delay and subsequent approval occurred 16 and 13 months respectively before the projected date of promotion.[3]

The approved promotion delay was scheduled to expire on September 1, 1979, which was 6 months after the effective date of plaintiff's promotion. This 6-month delay after the effective date was in accordance with Air Force Regulation (AFR) 36–89 ¶ 4–2(d) (1977). On March 19, 1979, plaintiff's then commander Colonel Richard recommended an early termination of the delay action based on plaintiff's admirable performance since September 1977. Colonel Richter stated:

He [plaintiff] has suffered much mental anguish over the past eighteen months and I certainly believe he has learned his

lesson. Obviously his conduct has been above reproach. His line sequence number for temporary promotion was effective 1 March. In view of these facts and the time elapsed since the incidents, I recommend you consider early termination of the withhold action [promotion delay].

However, on April 25, 1979, major command, CINCPACAF disapproved this request to terminate the delay. In denying the request Lieutenant General Loving stated that he thought the entire period of delay was necessary to fully evaluate plaintiff's personal conduct.

Subsequently, on July 24, 1979, prior to the expiration of the 6-month delay period, plaintiff's commander, Colonel Richter apparently altered his position concerning plaintiff. At that time, Colonel Richter recommended that plaintiff's name be removed from the temporary lieutenant colonel promotion list. He based this recommendation on the incidents which occurred in 1977 and other more recent incidents which reflected poorly on plaintiff's performance as Chief of Maintenance. These incidents, which occurred predominantly in June 1979, caused plaintiff's removal from his position as Chief of Maintenance on June 16, 1979.

Plaintiff acknowledged his commander's July 24, 1979, recommendation for his removal from the promotion list and sub-

---

**3.** The court takes note of the fact that this recommendation to delay plaintiff's promotion was initiated prior to presidential approval (February 3, 1978) and senate confirmation (February 6, 1978) of plaintiff's placement on the promotion list for promotion to the grade of lieutenant colonel effective March 1, 1979. The court recognizes the fact that the promotion delay, recommended on November 21, 1977, was not approved by major command until February 17, 1978, but it does question why plaintiff's name was not withheld or withdrawn from the promotion list presented to the President and the Senate until the promotion question was resolved. The court can only speculate that: 1) some form of communication failure occurred, 2) final approval of a promotion delay was needed to allow such a removal from the promotion list prior to presidential and senatorial consideration, or 3) some other regulatory provision, or distinction between a promotion delay and an actual removal from the promotion list, precluded the elimination of plaintiff's name from the promotion list at that point in the proceedings. The court also speculates that the Air Force did not have sufficient time to ascertain whether or not plaintiff remained eligible for promotion after consideration was given to the overlooked referral OER, and therefore, it was proper to allow the presidential approval and senate confirmation to occur. After said confirmation, further facts could be developed concerning plaintiff's eligibility during the delay period and action could then be taken in accordance with the findings of the Air Force. In any event, the court does not consider this fact sequence critical to the outcome of this case, but it did want to expressly note its recognition of what appears to be an unusual order of occurrences in plaintiff's promotion consideration.

mitted a rebuttal dated July 30, 1979. The case file was subsequently processed through Air Force channels pursuant to AFR 36–89. Various levels of the Air Force reviewed the recommendation that plaintiff be removed from the lieutenant colonel promotion list, and all such levels concurred. On May 2, 1980, the Secretary of the Air Force sent a memorandum to the Secretary of Defense recommending plaintiff's removal from the promotion list. In this memorandum the Secretary of the Air Force noted that presidential approval is needed to remove plaintiff pursuant to 10 U.S.C. § 8447 (1976). By memorandum dated May 12, 1980, the Secretary of Defense recommended to the President that plaintiff's name be removed from the recommended list for promotion to the temporary grade of lieutenant colonel. The President approved this recommendation on May 15, 1980.

During this delay period, plaintiff was promoted to the grade of permanent major on September 28, 1978. He is currently serving on active duty in that position. Subsequent to his removal from the temporary lieutenant colonel promotion list, plaintiff was considered but not selected for promotion by the temporary lieutenant colonel selection boards which convened on July 21, 1980, and February 2, 1981. He was also considered and not selected by the permanent lieutenant colonel selection board which convened on July 26, 1982.

Plaintiff filed his petition in this court on August 3, 1981. Action in this case was suspended after plaintiff filed an application for relief with the Air Force Board of Correction of Military Records (AFBCMR). By decision dated January 20, 1984, the AFBCMR notified plaintiff that his application for relief had been denied. Proceedings in this court were resumed by the

filing of an amended complaint on April 26, 1984.

## II.

In this case, plaintiff was initially denied relief by the AFBCMR. Therefore, the court's review of this case is somewhat limited. In *Sanders v. United States*, 219 Ct.Cl. 285, 298, 594 F.2d 804, 811 (1979), it was stated:

> Once a plaintiff has sought relief from the Corrective Board, such plaintiff is bound by that board's determination unless he can meet the difficult standard of proof that the Correction Board's decision was illegal because it was arbitrary, or capricious, or in bad faith, or unsupported by substantial evidence, or contrary to law, regulation, or mandatory published procedure of a substantive nature by which plaintiff has been seriously prejudiced, and money is due.

*See also Koster v. United States*, 231 Ct.Cl. 301, 307, 685 F.2d 407, 411 (1982). The parties in this case do not contest this standard of review. The court in *Sanders* quoted *Yee v. United States*, 206 Ct.Cl. 388, 398, 512 F.2d 1383, 1387–88 (1975) as follows: "military correction boards 'have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief.' * * * " *Sanders v. United States, supra*, 219 Ct.Cl. at 301, 594 F.2d at 813, (citation omitted). This court, like the court in *Sanders*, has reviewed the record and the arguments of the parties within the bounds of the above limited scope of review. The court concludes that the AFBCMR decision was both contrary to the evidence and contrary to the pertinent substantive regulations and therefore plaintiff is entitled to some relief.[4]

**4.** In this case, the court concludes that the Board committed legal error in failing to find noncompliance with the pertinent regulations. Clearly, the court can void an action based on legal error and award back pay. *See Ricker v. United States*, 184 Ct.Cl. 402, 396 F.2d 454 (1968). *See also generally Sanders v. United States*, 219 Ct.Cl. 285, 594 F.2d 804 (1979). The

court also finds that the Board acted contrary to all the evidence in failing to find that the basis for the promotion delay no longer existed. The court concludes that this factual error when combined with the above legal error, was arbitrary and capricious, prejudicial to plaintiff and had monetary consequences. Such action by the Board constitutes legal error which merits

It is plaintiff's primary contention that the promotion delay in this case was too extensive and the recommendation to remove his name from the promotion list was both untimely and in violation of the pertinent regulations. Therefore, plaintiff asserts that he is entitled to back pay in an amount equal to the difference between the pay of a major and a temporary lieutenant colonel from March 1, 1979, to the date of judgment. Plaintiff contends that the AFBCMR's failure to recognize this excessive delay and grant him his requested relief was arbitrary and capricious.

As defendant correctly points out, AFR 36–89, ¶ 4–2(d) (1977) allows a delay period to extend to 6 months from the officer's original effective date of promotion. It is uncontested in this case that the initial recommendation for plaintiff's removal from the temporary lieutenant colonel promotion list, submitted by his commander, dated July 24, 1979, was within 6 months of the March 1, 1979, effective date of his promotion. Paragraph 4–4(b) provides that if a recommendation to remove an officer is initiated before the delay period ends, then no extensions of the delay period are necessary. Therefore, as per these regulatory sections, defendant was in technical compliance.

However, the regulatory section which plaintiff focuses on is paragraph 4–2(e) which states: "The Commander who initiated the delay action must take prompt action to end it as soon as the basis for it no longer exists." In this case plaintiff's commander, Lieutenant General Loving recommended a delay in promotion on November 21, 1977, which was more than 16 months before the effective date of plaintiff's promotion. The basis of this recommendation was "to allow complete evaluation of your [plaintiff's] performance and behavior on the night of 21 Jul. 77" * * * and "to determine if additional action is required." Apparently, plaintiff had been involved in an incident on July 21, 1977, which involved conduct unbecoming to an officer and re-

sulted in a reprimand and a referral OER. (*See* note 1, *supra.*)

The only basis cited in support of the delay was that July 21, 1977, incident. Additionally, there was some concern over allegations of a September 9, 1977, incident of misconduct by plaintiff. However, such allegations were apparently never proven. Despite the lack of proof concerning this incident Lieutenant General Loving and Colonel R.D. Kaseman chose to comment on it in plaintiff's August 31, 1977—December 31, 1977, OER. The court notes that plaintiff's immediate Commander, Colonel Richard Richter in the same OER stated: "The 'single incident' [July 21, 1977] referred to above was not job related, and I foresee no possibility of future difficulties."

As it turns out Colonel Richter's predictions were accurate. Plaintiff's OER for January 1, 1978—December 31, 1978, contained nothing but praise for him. Under the category "Professional Qualities" the report stated, "Attitude, dress and behavior beyond reproach." Colonel Roger F. Fleshman added: "I am impressed with his positive approach and his intense desire to excel."

■ In addition to this totally positive OER, plaintiff was promoted to the permanent grade of major on September 28, 1978. If any concerns remained regarding his personal qualities, such a promotion should have put them to rest. In a statement dated March 18, 1980, the Department of the Air Force attempted to discount the impact of this promotion. It stated:

> The officer's permanent promotion involved no new responsibilities, nor any insignia or money change. We do not deem such promotion to be dispositive of the issue of whether the delay could have or should have remained in effect.

The court concurs that such a promotion is not dispositive on the issue of whether the basis of the promotion delay still existed. However, the court opines that the Air Force would not promote anyone to a high-

judicial relief. *See Sanders v. United States,* *supra,* 219 Ct.Cl. at 301–302, 594 F.2d at 813.

er grade if it had grave concerns about his or her personal qualities. Thus, this promotion, like the 1978 OER, is evidentiary support for the position that the basis for the promotion delay no longer existed.

Further support for the position that the basis for the delay no longer existed was Colonel Richter's March 19, 1979, recommendation that the promotion delay be terminated. In his recommendation Colonel Richter stated that plaintiff had performed admirably and his conduct has been above reproach. As additional support for early termination of the promotion delay, Colonel Richter pointed out the duration of time which had elapsed since the July 21, 1977, incident. Furthermore, it must be kept in mind that plaintiff was reprimanded for his misconduct in 1977 and his misconduct was noted in his record. Therefore, plaintiff was disciplined for his conduct at the appropriate time.

The court recognizes that a commander may exercise his discretion both to initiate a promotion delay and to terminate such a delay. In this case Lieutenant General Loving rejected Colonel Richter's recommendation that the delay be terminated stating that the full delay period was needed to evaluate plaintiff's conduct because of the nature of the July 21, 1977, incident of misconduct. Evaluation of plaintiff's personal conduct was the initial and only basis for ordering the delay in November 1977. The court has reviewed the entire administrative record in this case and can find no support for continued evaluation of plaintiff's personal conduct after the beginning of 1979. To the contrary, after 16 months, a highly favorable OER, and a promotion to the permanent grade of major, the court concludes that the basis for the promotion delay no longer existed in 1979. The commander's failure to so determine constitutes an abuse of discretion. Additionally, Lieutenant General Loving's failure to "take prompt action to end it [the delay] as soon as the basis for it no longer exists" is a violation of AFR 36–89, ¶ 4–2(e).

■ The court is aware that courts generally hesitate to interfere with discretionary government action, especially action concerning military affairs. *See e.g., Gilligan v. Morgan,* 413 U.S. 1, 93 S.Ct. 2440, 37 L.Ed.2d 407 (1973); *Orloff v. Willoughby,* 345 U.S. 83, 73 S.Ct. 534, 97 L.Ed. 842 (1953) *reh'g denied* 345 U.S. 931, 73 S.Ct. 779, 97 L.Ed. 1360 (1953).[5] However, judicial intervention into said provinces is not prohibited and is sometimes necessary. *See Service v. Dulles* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). In *Service v. Dulles,* a civilian employee was removed from his State Department position due to a reasonable doubt as to his loyalty. In that case the Secretary of State was given absolute discretion to terminate the employment of any State Department officer or employee whenever the Secretary deemed such termination necessary. This

---

5. The court takes note of defendant's argument that the court lacks jurisdiction to hear this case because the power to appoint commissioned officers is entirely within the province of the President and the executive branch in general. Defendant claims that the court's intervention in this area would be a violation of the separation of powers as set out in the United States Constitution.

The court recognizes the degree of authority given the President and the executive branch in the area of military appointments. However, the United States Supreme Court has recognized that judicial relief is available when an individual is injured by an act of a government official which is in violation of his express or implied authority. *See Harmon v. Brucker,* 355 U.S. 579, 581–82, 78 S.Ct. 433, 434–35, 2 L.Ed.2d 503 (1958). In *Harmon v. Brucker,* the Court stated

that the district court had jurisdiction to determine whether the defendant exceeded its powers. If it did exceed its authority, judicial relief for the illegality is available.

In the case at bar one of the primary issues revolves around defendant's compliance with Air Force Regulations. Based on the holding in *Harmon v. Brucker, supra,* this court has jurisdiction to construe the regulations at issue in order to determine whether defendant did or did not comply with its regulations and as a result whether or not plaintiff is entitled to monetary relief. An assertion that payment is due is one basis for this court's jurisdiction. *See Sanders v. United States,* 219 Ct.Cl. 285, 295, 594 F.2d 804, 809 (1979) (*citing Eastport S.S. Corp. v. United States,* 178 Ct.Cl. 599, 372 F.2d 1002 (1967)). *See also Koster v. United States,* 231 Ct.Cl. 301, 308, 685 F.2d 407, 412 (1982).

discretion was given to him by section 103 of Pub.L. No. 188, 82d Cong., known as the McCarran Rider. However, in order to limit "Gestapo" methods to determine who were loyal employees, the State Department promulgated regulations to aid in implementing the authority given the Department under the McCarran Rider. 354 U.S. at 377, 77 S.Ct. at 1159.

■ In *Service v. Dulles,* the Supreme Court concluded that, despite the Secretary's absolute discretion, he was bound by the agency's regulations. In that case the Secretary failed to comply with the regulations, and therefore, the dismissal could not stand. 354 U.S. at 388–89, 77 S.Ct. at 1165. The Supreme Court based its decision on *Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954) which set out the general principle that regulations prescribed by a government administrator are binding on him even when the administrative action under review is discretionary in nature. *Service v. Dulles, supra,* 354 U.S. at 372, 77 S.Ct. at 1157. For further support for the proposition that an agency must follow its own regulations and failure to do so constitutes legal error see *Cruz-Casado v. United States,* 213 Ct.Cl. 498, 502–03, 553 F.2d 672, 675 (1977); *Bray v. United States,* 207 Ct.Cl. 60, 515 F.2d 1383 (1975).

In this case, like *Service v. Dulles, supra,* the commander was given discretion to initiate and terminate promotion delays. As occurred in *Service v. Dulles,* however, the commander failed to comply with the pertinent regulations, in particular AFR 36–89 ¶ 4–2(e). Defendant's failure in this case to promptly terminate the delay, at a time when it was warranted, substantially

and adversely affected plaintiff's rights in that after the termination of the delay he would have been promoted as soon as possible. AFR 36–89 ¶ 4–2(g)(2). In any event, failure to comply with the regulation is sufficient to render plaintiff's removal from the promotion list invalid. *See Service v. Dulles, supra,* 354 U.S. at 388, 77 S.Ct. at 1165.[6]

The Air Force Judge Advocate General (JAG), in a decision dated December 15, 1978 (Op JAGAF 1978/120), ruled that a commander had failed to comply with AFR 36–98 ¶ 4–2(e) (1977) by not promptly ending a delay as soon as the basis for it no longer existed. As a result of this noncompliance with the regulation the promotion nonqualification action against the respondent officer was declared to have been initiated in an untimely fashion. His promotion nonqualification was thus ruled legally insupportable.

In the JAG decision, *supra,* the military officer had been civilly charged with possession of marijuana. Prior to that time he had been scheduled for promotion to the Reserve grade of first lieutenant. However, when this drug charge surfaced, his commander recommended that promotion be withheld pending the outcome of the drug charges. The said charges were subsequently dismissed but the commander took no action to terminate the promotion delay. Instead, the commander initiated the action, which was the subject of the JAG's opinion, to recommend that the respondent be found not qualified for promotion.

■ The court finds the facts of the above JAG case and those of the case at bar to be analogous. Clearly, it is more

---

**6.** In considering prejudice to plaintiff caused by the noncompliance with the regulation, *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957) would indicate that no prejudice need be shown. However, in some cases in which a regulatory violation occurs some showing of prejudice appears necessary. *See Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804 (1979). In *Sanders v. United States,* the court alluded to but rejected a "but for" prejudice test. Without expressing an opinion on whether or not a "but for" test should be utilized in this

case, the court is of the view that such a test would be satisfied in any event. If the commander had promptly terminated the promotion delay in this case, as required by the regulation, when the basis for the delay disappeared then plaintiff would have been promoted as soon as possible AFR 36–89 ¶ 4–2(g)(2). Instead, the delay was continued and the Air Force was able to develop new bases to remove plaintiff from the promotion list. These circumstances would satisfy a "but for" test if one were required.

difficult in this case to ascertain with any precision when the basis for the promotion delay disappeared as compared to the situation in which charges against a person are dropped. However, the court is convinced that, in this case, the basis for plaintiff's promotion delay no longer existed in early 1979 and it was at that point that the commander had an obligation under paragraph 4–2(e) to end the delay.

The court recognizes that paragraph 4–2(d) allows a promotion delay to extend 6 months beyond the effective date of promotion. However, subsection (d) states that the delay period *"may not exceed 6 months"* from the effective date of promotion. This is an outer limit for the length of a delay without an extension. When subsection (d) is read in conjunction with (e) it is clear that the outer limit set in (d) is not intended to allow defendant to always have 6 months before the delay is terminated. The Air Force JAG opinion cited above emphasizes this point and makes it clear that defendant must comply with AFR 36–89 ¶ 4–2(e).

Further support for the position that the commander failed to comply with AFR 36–89 ¶ 4–2(e) can be found in the advisory opinion to the Board by Everett G. Hopson, Chief of the General Law Division in the Office of the Judge Advocate General referred to by both parties. Though Hopson found that the Air Force *"technically"* complied with its regulations in that it initially recommended removal of plaintiff from the promotion list within 6 months of the effective date of his promotion, the court finds that the tenor of paragraph 7 of Hopson's advisory opinion indicates that he thought the delay should have been terminated under AFR 36–89 ¶ 4–2(e). Though the Board was in no way obligated to follow this advisory opinion, the court finds that it does provide further support for plaintiff's position that the delay period should have been terminated in early 1979.

As a result of the violation of paragraph 4–2(e) and corresponding prejudice to plaintiff, the court concludes that the delay period should have been terminated prior to any recommendations that plaintiff be removed from the promotion list. The court concludes that the AFBCMR's denial of relief to plaintiff was contrary to the evidence in the record and contrary to the pertinent regulations pertaining to promotion delays. According to AFR 36–89 ¶ 4–2(g)(2), if the delay period ends after the projected effective date of promotion the officer is to be promoted as soon as possible. In addition, "[t]he officer is given the effective date and the date of rank to which he or she was originally entitled if the delay action had not been initiated." Therefore, the back pay award which plaintiff should receive will commence on March 1, 1979, the projected effective date of plaintiff's promotion.[7]

---

7. The court recognizes that *D'Arco v. United States,* 194 Ct.Cl. 811, 441 F.2d 1173 (1971) cited and relied upon by defendant, is a factually similar case, which supports defendant's position that the Air Force could recommend and the President could approve an officer's removal from a promotion list. However, this case is distinguishable from *D'Arco* in that the delay issue and defendant's compliance with the regulations are involved in this case and were not involved in the *D'Arco* case. Therefore, *D'Arco v. United States, supra,* is not controlling on the delay issue decided herein. At the same time, the court wishes to emphasize that the holding on this issue is limited by the special and unusual facts in this case.

Defendant argues that this court lacks jurisdiction to promote plaintiff to lieutenant colonel. In general the court concurs with this assertion. *See Koster v. United States,* 231 Ct.Cl.

*supra,* at 310, 685 F.2d at 413. However, defendant concedes that if plaintiff has a legal right to be promoted, he is entitled to that promotion. *See Sanders v. United States,* 219 Ct.Cl. 285, 307–08, 594 F.2d 804, 816–17 (1979); *Doggett v. United States,* 207 Cl.Ct. 478, 482 (1975); *Selman v. United States,* 204 Ct.Cl. 675, 498 F.2d 1354 (1974). In this case, the court concludes that the basis for the delay period no longer existed, obligating the commander to promptly end the delay he initiated. AFR 36–89 ¶ 4–2(e). If that delay should have ended before the effective date (March 1, 1979) of plaintiff's promotion then plaintiff should have been promoted on that effective date. AFR 36–89 ¶ 4–2(g)(1). If the delay period should have ended subsequent to the effective date, which is probably the situation in this case, then plaintiff should have been promoted as soon as possible. AFR 36–89 ¶ 4–2(g)(2). In either case, plaintiff, under the regulations, was legally entitled to his

However, this conclusion by the court that defendant violated its own regulations does not dispose of this case. Plaintiff's promotion in this case was to be to the grade of temporary lieutenant colonel. Subsequent to the time when he *should* have been promoted to temporary lieutenant colonel, it was determined that plaintiff's performance was becoming less than adequate resulting in a referral OER (*See supra* Note 1). Based on plaintiff's recent poor performance as well as his prior personal misconduct, Colonel Richter recommended that plaintiff be removed from the promotion list. This recommendation worked its way through Air Force channels, was approved by both the Secretary of the Air Force and Secretary of Defense, and was finally approved by the President on May 15, 1980.

The court finds that the recommendation to remove plaintiff from the promotion list was equivalent to recommending the removal of plaintiff from his temporary position. The court bases this conclusion on the reasons set out for the recommendation that plaintiff be removed from the promotion list, which were: 1) his personal misconduct, and 2) his recent substandard performance. Such reasons for removal from the promotion list were of a nature which would appear to justify the President in vacating plaintiff's temporary commission. For additional support for the President's authority to remove plaintiff from his temporary position see *D'Arco v. United States,* 194 Ct.Cl. 811, 816, 441 F.2d 1173, 1175 (1971).

It is clear that 10 U.S.C. § 8447(c) empowered the President to "vacate at any time a temporary appointment in a commissioned grade." *See also* AFR 36–89 ¶ 1–3(a) (1977). Therefore, as of May 15, 1980, when the President approved the recommendation to remove plaintiff from the promotion list, he had also vacated plaintiff's temporary appointment.[8] It is at that point that plaintiff's entitlement to back pay as a temporary lieutenant colonel ceases.

### III.

For reasons set forth above, plaintiff's motion for summary judgment is partially granted in that plaintiff is entitled to back pay calculated in accordance with law from March 1, 1979 to May 15, 1980. Defendant's motion to dismiss is denied and its cross-motion for summary judgment is denied in part and granted in part. The Secretary of the Air Force is directed to order corrections in plaintiff's military record necessitated by this opinion. The parties are directed to provide the court, within 30 days of the date of this opinion, with the amount due plaintiff under this opinion in order that the court may enter a final judgment in this case.

promotion and therefore, there is no jurisdictional bar to this court awarding plaintiff back pay. *See Sanders v. United States, supra,* 219 Ct.Cl. at 307–08, 594 F.2d at 816–17; *Doggett v. United States, supra,* 207 Ct.Cl. at 482.

It should be emphasized that the court is not promoting plaintiff. When the President and Senate approved and confirmed plaintiff's placement on the promotion list to the position of lieutenant colonel he was effectively promoted as of March 1, 1979, unless intervening circumstances warranted a delay or perhaps a withdrawal of said promotion. However, any attempt to delay or vitiate plaintiff's promotion must be carried out in accordance with the applicable regulations. In this case the court finds that defendant failed to comply with its

regulations in delaying plaintiff's promotion and therefore, plaintiff's promotion should have been effective on March 1, 1979. Accordingly, the court's action in this case is one of upholding plaintiff's existing legal entitlement to his promotion and to the pay which accompanies said promotion.

**8.** Plaintiff cannot and does not appear to contest the authority of the President to remove him from his temporary grade of lieutenant colonel. The statute involved in this case, unlike the law applicable in *Marbury v. Madison,* 1 Cranch (5 U.S.) 137, 2 L.Ed. 60 (1803), made plaintiff removable at the will of the President and thus the rule of *Marbury v. Madison, supra,* does not apply.